UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NIRANJAN LAL, M.D.,

                Plaintiff,                        Case No. 1:05-CV-853

v.                                        HON. GORDON J. QUIST

UNITED STATES LIFE INSURANCE
COMPANY,

                Defendant.
_____/

**OPINION**

      Plaintiff, Niranjan Lal, M.D. ("Lal"), filed a complaint against Defendant, United States Life

Insurance Company ("U.S. Life"), in state court, alleging a breach of insurance contract.  U.S. Life

removed the case to this Court based on diversity jurisdiction.  Now before the Court are Lal's

motion for partial summary judgment and U.S. Life's motion for summary judgment.  For the

following reasons, the Court finds that Lal was suspended as of February 16, 2003, and will deny

the parties' motions for summary judgment

**I.  Background**

      Lal is a physician in the State of Michigan.  U.S. Life is a New York corporation doing

business in Michigan.  Lal purchased a disability insurance policy ("Policy") with U.S. Life in 1983,

through the American Medical Association, based on his status as a licensed physician.  The Policy

provided, in part, that:

      Your insurance will end on the earliest of:

. . .

6. upon the suspension or revocation in any state of your license to practice medicine as a result of a criminal act, ethical violation, or gross malpractice; or upon your surrender of your license to practice medicine in any state prior to, during, or in lieu of any medical licensure board inquiry, investigation or other action pertaining to a criminal act, ethical violation, or gross malpractice.

On March 27, 1997, the Department of Consumer & Industry Services, Board of Medicine and Disciplinary Subcommittee ("Board") summarily suspended Lal's license to practice medicine "commencing the date this order is served upon [Lal]."  It is undisputed that Lal was served with the suspension order on March 31, 1997.  After being served, and on the same day, Lal obtained a stay of the Order of Summary Suspension in Michigan circuit court. (Lal Dep. at 11-12; Def.'s Br. in Supp. Mot. Summ. J. and in Opp. to Pl.'s Mot. Summ. J., Ex. F.)

On April 7, 1997, the Michigan circuit court extended the stay of the Order of Summary Suspension.  The Order of Summary Suspension was lifted by the circuit court on August 28, 1997, pursuant to a stipulation agreed to by the parties on July 15, 1997.  On March 17, 1999, Lal was convicted of the prescription drug charges related to the summary suspension.

On January 17, 2003, the Board issued its "Final Order":

IT IS HEREBY ORDERED that for violation . . . of the Public Health Code, supra, Respondent's license to practice medicine in the State of Michigan is SUSPENDED FOR A PERIOD OF SIX MONTHS AND ONE DAY commencing on the effective date of this Order.

* * *

IT IS FURTHER ORDERED that this Order shall be effective 30 days from the date signed by the Disciplinary Subcommittee's Chairperson or authorized representative, as set forth below.

The Order was signed on January 17, 2003.   Thus, the suspension would be effective on February 16, 2003.  The Board sent Lal a letter informing him of the opportunity to ask for reconsideration

and to have an additional 30 days added to the period before the commencement of the suspension. Lal requested that the Board reconsider the suspension, but it declined to do so and informed him of this decision on April 22, 2003.

Lal visited his physician, Michelle Anderson, on March 25, 2003, regarding his chronic calcific pancreatitis. Lal had previously been treated by Dr. Anderson for this condition in 2001. Dr. Anderson's report noted that Lal had a long history with this illness and that she "was shocked to see that I had not seen him for approximately 1-1/2 years." (Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. J.) The report stated that Lal "has gotten progressively worse" since the last visit. Lal also informed Dr. Anderson that he had not worked since February 4, 2003, due to the worsening condition.

Lal applied for long term disability benefits for his chronic pancreatitis pursuant to the Policy on September 5, 2003. As part of the claim, he submitted a medical report from Dr. Anderson as well as a letter from Dr. Anderson in which she stated that Lal was totally disabled as of February 4, 2003. U.S. Life denied his claim, finding that his policy was terminated on March 27, 1997, when the Board suspended his medical license. Following several unsuccessful appeals to U.S. Life, Lal filed this complaint.

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a

light most favorable to the non-moving party, but may grant summary judgment when "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor*

*Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III.  Discussion

**A.      The Policy's termination date**.

When construing the terms of a contract, a court "shall give the language contained within

the policy its ordinary and plain meaning so that technical and strained constructions are avoided."

*Michigan Township Participating Plan v. Pavolich*, 232 Mich. App. 378, 383, 591 N.W.2d 325, 328

(1998).  Where an insurance policy is clear, a court is "bound by the specific language set forth in

the agreement." *Id*. at 382, 591 N.W.2d at 328 (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 449

Mich. 155, 160, 534 N.W.2d 502, 504 (1995)).

According to the terms of the Policy, it terminated  "upon the suspension" of Lal's medical

license by the Board.  Thus, the parties dispute the date that Lal's license was suspended.  U.S. Life

contends that the Policy terminated on March 31, 1997, when the Order of Summary Suspension was

served upon Lal and, hence, became effective.[1]  Lal, however, argues that the circuit court's stay of

the summary suspension prevented the effectuation of the suspension.

U.S. Life contends that before Lal could obtain a stay of the suspension, he first had to have

notice of the suspension.  Lal himself stated that he first was served with the Order of Summary

Suspension, then faxed the document to his attorney, who took it to the court and obtained a stay.

---

[1] When it rejected Lal's disability claim, U.S. Life determined that the Policy terminated on March 27, 1997, and refunded Lal for all premiums paid after that date. (Def.'s Br. in Supp. Mot. Summ. J. and in Opp. to Pl.'s Mot. Summ. J., Ex. P.)

(Lal Dep. at 11-12.)  U.S. Life asserts that this is evidence that Lal's license was suspended, even if only for a few hours, before the stay was issued, and that this suspension acted to terminate the Policy.

Although the Policy terminates "upon the suspension" of Lal's medical license, the circuit court's stay acted "to preserve the status quo existing on the date of its issuance." 1 Am. Jur. 2d *Actions* § 68 (2006).  *See Gilley v. United States*, 649 F.2d 449, 453 (6th Cir. 1981) (noting that stays of administrative agency actions are granted by courts "to maintain the status quo" pending further review of the agency's action); *Doster v. Estes*, 126 Mich. App. 497, 508, 337 N.W.2d 549, 554 (1983) (stating that the purpose of injunctive relief is "to preserve the status quo" pending trial or administrative appeal).  The status quo in injunctive procedures is the "last, uncontested status preceding commencement of the controversy." *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) (internal citations omitted). The circuit court's stay was issued on March 31, 1997, and was effective immediately.  The stay preserved the status quo so that Lal's license was not suspended pursuant to the Order of Summary Suspension. Therefore, because Lal's license was not suspended on March 31, 1997, the Policy did not terminate on this date.

The Board entered its Final Order suspending Lal's license for six months and a day on January 17, 2003.  The Final Order stated that it would be effective 30 days later on February 16, 2003.

Apparently, on January 31, 2003, Lal sent a letter to the Department of Consumer & Industry Services, Bureau of Health Services, requesting an extension of the time in which the revocation of his license would be effective.  On February 5, 2003, a manager in the Department responded to this request.  This letter first summarizes the January 17 Order and then says:

> The Board of Medicine's Disciplinary Subcommittee is the only authority that can grant a request to change a Final Order's terms and conditions. Therefore, if you still wish to request the date for the suspension be extended for 30 days you need to file a request for reconsideration with the Disciplinary Subcommittee. The request for reconsideration would need to reach this office no later that (sic) 60 days from the effective date of the Final Order.

This letter says nothing about what would happen in between the effective date of the Final Order, February 16, 2003, and the 60 days during which Lal had to file the request that the date of the suspension be extended for 30 days. On February 21, 2003, Lal filed a Motion for Reconsideration. Among the items of relief requested in the Motion for Reconsideration was that the suspension be delayed until the Motion for Reconsideration was decided. On April 22, 2003, the Board of Medicine denied the Motion for Reconsideration. The denial of the Motion for Reconsideration says nothing about the effective date of the suspension and it says nothing about a postponing the effective date of the suspension. It simply says that the request for reconsideration is denied, and "this order shall be effective on the date signed . . . ."

Lal argues that the February 5 letter from the Department of Consumer & Industry Services, Bureau of Health Services, delayed his suspension. He argues that the suspension did not occur until April 22, 2003, when the Board denied his Motion for Reconsideration. Even upon a second look, this Court believes and holds that Lal's interpretation of the February 5 letter is incorrect.

First, the Court agrees that the February 5 letter is somewhat ambiguous, but it is not ambiguous as to its major point - the letter could not extend the effective date of the extension. Only the Board of Medicine's Disciplinary Subcommittee could extend the effective date of the suspension.

Second, the Final Order Denying Reconsideration states "this order shall be effective immediately." By its very terms it is referring to the Final Order Denying Reconsideration, not the January 17 Final Order, effective February 16.

Third, there is no order from the Board of Medicine Disciplinary Subcommittee delaying the effective date of the suspension.

Fourth, Lal says that his interpretation of the effective date of the suspension must be correct because he was not reinstated until October 9, 2003. But this date does not support Lal's conclusion that there was no suspension in February. If the suspension started on April 22, the suspension would have terminated, at the earliest (subject to reinstatement), on October 23, 2003, which was two weeks after Lal's reinstatement of October 9, 2003. There are other explanations for reinstatement in October that Lal has not refuted. The original January 17, 2003, Final Order, itself, says:

> . . . reinstatement of a license which has been suspended for more than six months is not automatic and, in the event Respondent applies for reinstatement of the license, application for reinstatement may be made not sooner than 90 days prior to the end of the suspension period . . . . Further, in support of the application for reinstatement, Respondent shall supply clear and convincing evidence that Respondent is of good moral character , is able to practice medicine with reasonable skill and safety, and that it is in the public interest for Respondent to resume practice.

Without further proof from Lal in opposition to U.S. Life's motion for summary judgment, the Court would only be speculating about the reason for the reinstatement date. Considering this quoted language from the January 17, 2003, Final Order, it is not reasonable to conclude that the end of suspension occurred six months and one day after April 22, 2003, which, as shown, it did not. There had to be at least some period of suspension that occurred prior to April 22, 2003, in order for the October 9 date to make any sense.

Finally, the Court will take judicial notice[2] of the Michigan Department of Community

Health's "Verify a License/Registration" website.[3]  According to that website, Lal was suspended

on February 16, 2003, and reinstated on October 9, 2003.[4]  Therefore, the Court finds that on

February 16, 2003, Lal was suspended and his Policy terminated.

**B.**      **Whether Lal was totally disabled at the time of his suspension is a question of fact**.

In order to be eligible for disability benefits under the Policy, Lal must show that he was

totally disabled prior to February 16, 2003.  The Policy defines "Total Disability" as:

> -prior to your 65th birthday, your complete inability to perform the substantial and
> material duties of your Current Occupation beyond the end of the Elimination Period;
> -on or after your 65th birthday, your complete inability to perform the substantial and
> material duties of any gainful job for which you are reasonably fit by training,
> education or experience.
> The Total Disability must be a result of an Injury or Sickness and must begin while
> insured under the group policy.  To be considered totally disabled, you must also be
> under the Regular Care and Attendance of an Attending Physician.

The Policy defines "Regular Care and Attendance" as "observation and treatment to the extent

necessary under existing standards of medical practice for the condition causing Disability."

Lal contends that he was totally disabled as of February 4, 2003.  Lal's claim with U.S. Life

asserts that this was the last day Lal was able to work and that he had first been treated for the

---

[2]This Court has previously determined that "[p]ublic records and government documents are generally considered not to be subject to reasonable dispute," including "public records and government documents available from reliable sources on the Internet." *See United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972-73 (W.D. Mich. 2003)(internal quotations omitted). Under Fed. R. Evid. 201(e) a party is entitled to an "opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Prior notification by the court of its intention to take judicial notice is not necessary, and the party's request to be heard "may be made after judicial notice has been taken." *Id*.

[3]The website was referenced in Plaintiff's Response to Defendant's Motion for Summary Judgment Exhibit D.

[4]Lal's medical license history is available at:
http://www.cis.state.mi.us/free/publicinfo.asp?rb_name=ON&rb_facility=&l_person_id=125223&l_profess
ion_id=43&l_license_id=125915&Last_Name=LAL&First_Name=NIRANJAN&License_number=&Facility_Name
=&DBA_Name=&profession=0&offset=0

disability on September 7, 2001.  Lal also submitted to U.S. Life a letter from Dr. Anderson, his treating physician,  in which she stated that Lal's disability "became active and effective February 4, 2003." (Def.'s Br. in Supp. Mot. Summ. J. and in Opp. to Pl.'s Mot. Summ. J., Ex. L.)

Dr. Anderson stated that she considered Lal to be under her regular care.  Dr. Anderson interpreted regular care to mean "regular scheduled visits that are ongoing for a length of time and that would involve evaluation and treatment." (Anderson Dep. at 74-75.)  Dr. Anderson also stated that Lal had been under her regular care for treatment of the condition as early as March 2001, long before the date that the Policy terminated.

U.S. Life asserts that Lal could not have been totally disabled on February 4, 2003, because he was not under Dr. Anderson's "Regular Care and Attendance."  U.S. Life cites case law but does not present evidence pertaining to the relevant medical standards of observation and treatment of Lal's condition as required under the Policy.  U.S. Life argues that Lal could not be under the regular care of Dr. Anderson because he did not receive any treatment from September 2001, to March 25, 2003.  Dr. Anderson admitted that because of the significant lapse in time between examinations, Lal could not have obtained a prescription renewal. (Anderson Dep. at 28.)  The first time that Lal sought Dr. Anderson's care while claiming an inability to work due to his condition was March 25, 2003.  Dr. Anderson admitted that her written statement to U.S. Life that Lal became disabled on February 4, 2003, was based on a comment made to her by Lal, not from her own examination. (Anderson Dep. at 37-38.)

Because Lal's date of total disability has not been shown and in light of the absence of evidence regarding the medical standards of observation and treatment for Lal's disabling condition, there is a question of fact as to whether Lal was "totally disabled" before the Policy terminated on February 16, 2003, and U.S. Life is not entitled to summary judgment.

## IV.  Conclusion

For the foregoing reasons, the Court finds that Lal was suspended as of February 16, 2003, and will deny the parties' motions for summary judgment.

An Oder consistent with this Opinion will be issued.


Dated:  December 7, 2006                                   /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE